AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

District of Kansas

FILED
U.S. District Court

APR 29 2021

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the residence and devices located at<br>4230 N Eagle Lake Court, Bel Aire, Kansas,<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No. 21-m-6073-01-KGG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

the residence and devices located at 4230 N Eagle Lake Court, Bel Aire, Kansas, as described in Attachment A

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Receipt/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

KASEV SUNDAR, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-29-21

_____
*Judge's signature*

City and state:  Wichita, KS

The Honorable Kenneth G. Gale
*Printed name and title*

FILED
U.S. District Court
District of Kansas

APR 29 2021

Clerk, U.S. District Court
By _____ Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF:
THE RESIDENCE AND DEVICES AT
4230 N EAGLE LAKE COURT
BEL AIRE, KS 67220, as further described in
Attachment A

Case No. 21-m-6073-01-KGG

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT

I, Kasev R. Sundar, Special Agent of Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1.   I make this affidavit in support of an application for a warrant to search the premises and devices located at 4230 N EAGLE LAKE COURT, BEL AIRE, KS 67220, hereinafter "RESIDENCE," further described in Attachment A, for the things described in Attachment B.

2.   I am a Special Agent with the Federal Bureau of Investigation and have been since January 8, 2021. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code § § 2252 and 2252A. Before becoming a Special Agent for the FBI, I was an Army Officer on Active Duty. One of my additional duties during my Active Duty time was conducting non-judicial military investigations into actions that violated military policies such as negligent discharges of firearms, vehicle safety violations, and workplace accidents resulting in injuries. I have received training on conducting a wide variety of criminal investigations, to include organized crime, drug

trafficking, human trafficking, crimes against children, major theft, and other federal crimes. I have also received training on the preparation and execution of search warrants. I am currently conducting criminal investigations on multiple subjects.

3. As a special agent of FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §§ 2252 and 2252A.

4. As will be shown below, there is probable cause to believe that David Viegra (VIEGRA) has received and/or possessed child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I submit this application and affidavit in support of a search warrant authorizing the search of VIEGRA's place of residence at 4230 N Eagle Lake Court, Bel Aire, KS 67220. I seek authorization to search the residence at the aforementioned address to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the knowing receipt and possession of child pornography as further described in Attachment B.

5. The information in this affidavit includes information I have personally gathered as a result of a previous search warrant for a Toshiba hard drive belonging to VIEGRA as well as information that has been communicated to me by the employees of Ribbit Computers and an FBI Staff Operations Specialist as outlined below. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me or other investigators concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

## DEFINITIONS

6.    The following definitions apply to this Affidavit and Attachment B:

    a.    **"Child Pornography"** includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

    b.    **"Minor"** means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

    c.    **"Sexually explicit conduct"** applies to visual depictions that involve the use of a minor, *see* 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to depict an identifiable minor, *see* 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. *See* 18 U.S.C. § 2256(2) (A).

    d.    **"Visual depictions"** include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

    e.    **"Child Erotica"** means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

    f.    **"Computer"** refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." *See* 18 U.S.C. § 1030(e) (1). This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.

## INVESTIGATION/PROBABLE CAUSE

7.    On April 16, 2021, FBI Special Agent Thomas Ensz and I, FBI Special Agent Kasev Sundar (Affiant), spoke with Kyle Kempton, the General Manager of the Ribbit Computers store at 3433 N Rock Road, Wichita, KS 67226.

8.    Kempton informed us that on April 15, 2021 at approximately 11:00 a.m. a man (later identified as David VIEGRA) had entered the Ribbit Computers store and asked the store's employees to back up pictures on the hard drive of his Dell laptop on to a flash drive. He did not identify any particular folder or files that he wanted recovered. He also asked the employees to dispose of the laptop casing. The employees informed him they would dispose the laptop and return the hard drive upon completing the backup of the hard drive onto a separate flash drive. The employees informed him that they would contact him upon completing the back up of his photos. VIEGRA received a receipt and left the laptop at the store.

9.    Kempton further advised that one of the technicians (Jonah Rohr) at Ribbit Computers later removed the laptop's hard drive (a Toshiba hard drive, Serial Number 957H0328S) from the laptop, connected it to a workstation, and began trying to obtain the necessary permissions to copy the contents to a flash drive. As Rohr was looking through the hard drive's contents, he came across a folder named "Users" that needed to be opened to obtain the necessary permissions for imaging the hard drive. Upon opening the folder, he saw that there were approximately four different folders for users of the laptop. As he was opening up all of the user folders one by one to obtain permissions needed to back up the photos, Rohr observed a folder named "sunshine in the rain" inside of the "Users" folder. When Rohr opened the "sunshine in the rain" folder, he saw more folders which contained various photos and documents. One of the folders under the "sunshine in the rain" folder was named "Shared". Upon opening the folder named "Shared," he saw several video files and an image file with titles that suggested their contents involved

sexually exploiting children. Rohr then immediately notified Kempton who instructed Rohr to not open any of the files.

10.     Kempton advised he then notified the owner of Ribbit Industries, Alex Harb. The next day, April 16, 2021, Harb notified the FBI Wichita Resident Agency about the hard drive through an acquaintance.

11.     After informing us of how the incident transpired, Kempton showed Special Agent Ensz and me the folder that contained the files with titles indicating child pornography content. Examples of those titles included:

   a.     "3 horny teens in hotel orgy ( sex xxx porn redhead tits cunt pussy fucking lesbian blond breasts brunette anal hardcore sweet ass fuck slut cum drip wet hardcore hot action )01" – (MPG file, dated 01/21/2008)

   b.     "11 yo girl rides the cock and loves it kiddy porn incest sex naughty little girl slut, priceless, pussy, white, ass, gangbang, fucked" – (MPG file, dated 01/10/2008)

   c.     "13 little girl kiddy child ddoggpm Lolita in(illegal_preteen_underage_lolita_kiddy_child_incest_xxx_porno_gay_fuck_you ng_naked_nude_little_girl_cum_face_teenage_cheerleaders_a" – (MPG file, dated 01/10/2008)

   d.     "14 & 16 years – sisters playin (young nude sexy hairy angel pussy teens ex fucking hard sex incest bitch Lolita nude pussy)" – (JPG file, dated 11/29/2007)

   e.     "16yo gets raped, hymen visibly penetrated little girl young porn real child sex baby" – (MPG file, dated 01/10/2008)

12.     After showing us the title of the videos, Kempton provided us with the receipt they had given to the man who had dropped of the laptop, identifying the customer as David VIEGRA. VIEGRA listed his address at 4230 N Eagle Lake Court, Bel Aire, KS 67220, and provided his Yahoo.com email address (indicating he maintains access to the internet via a computer or similar device).

13.     While the above files were not reviewed or opened by Ribbit personnel nor FBI, the titles were plainly indicative of child pornography, i.e., children engaged in sexually explicit

conduct. The titles reference both ages and sex acts, and even include phrases like "kiddy porn" and "young porn" and "Lolita," all of which are indicative or associated with child pornography.

14. Additionally, because the files were located in a folder titled "Shared," there is probable cause to believe the laptop contained either a file sharing program that utilized the "Shared" folder or that the user otherwise engaged in sharing (distribution/receipt) activity with these files.

15. Special Agent Ensz and I took possession of the hard drive and laptop casing pending the issuance of a search warrant authorize Law Enforcement to search through the contents of the aforementioned device for evidence of child pornography offenses.

16. On the afternoon of April 19, 2021, I obtained a search warrant (21-M-6068-01-KGG) signed by U.S. Magistrate Judge Kenneth G. Gale, authorizing law enforcement to search the contents of the Toshiba hard drive that VIEGRA had dropped off at Ribbit Computers.

17. Physical examination of the exterior of the laptop casing exhibited a Microsoft credential with a date indicating 2005.

18. Special Agent Ensz utilized a write-blocker device to undertake an initial search of the Toshiba hard drive, to confirm the presence of child pornography. This initial examination revealed the hard drive utilized a Windows XP operating system (indicating the hard drive was from the mid-2000's).

19. Special Agent Ensz exported several videos (identified below) from the Toshiba hard drive and saved them onto the hard drive of a stand-alone computer that is located in the office of the FBI's Wichita Resident Agency. Since the business day was coming to an

end, we decided to suspend the initial examination of the hard drive and resume the examination and review of content the next morning. A sample of the exported videos included:

a.    "3 horny teens in hotel orgy (sex xxx porn redhead tits cunt pussy fucking lesbian blond breasts brunette anal hardcore sweet ass fuck slut cum drip wet hardcore hot action )01.mpg" – This is one of the video titles observed at Ribbit Computer's. This video depicted three individuals – one male and two females – who appear to be teenagers based on observable physical characteristics such as the male's lack of hair on his torso, one female has a pink cast on her arm which would be unusual for an adult, and their relative physical build in relation to objects in the room (they did not appear to be adults) and in relation to one another. These three individuals were engaged in various sex acts with each such as masturbation, oral sex, and vaginal sex, and anal sex. The title appears to accurately describe the content relative to approximate age of the participants.

b.    "16yo gets raped, hymen visibly penetrated little girl young porn real child sex baby" – This is one of the video titles observed at Ribbit Computer's. This video depicted a penis penetrating another person's vagina. Because the video focusses on the genitals, it is difficult to ascertain the relative size of the involved individuals. However, due to the absence of hair and absence of any indications of shaving/stubble on or around the female's pubic region, the video appears to depict a prepubescent minor. The title appears to accurately describe the content relative to minority status of the participants.

c.    "GOOD! 2yo girl getting raped during diaper change – Babyshivid-Pussy Pounded Pthc Pedo Child Fuck ( kiddy ddoggprn naked ~1" – This title and video were discovered during the initial examination within the "Shared" folder discussed above. This video depicted a male forcing his penis into or against the genitals of an infant/toddler aged girl, with a diaper visible in background. The title appears to accurately describe the content relative to minority status of the child.

d.    "many girls from 12yo to 14yo having sex experiences kiddie pedo boy Lolita R@ygoldunderage" – This title and video were discovered during the initial examination within the "Shared" folder discussed above. This video depicted a series of clips depicting numerous females, estimated to be between the ages 12 to 14 years old, based on observable features, such as lack of pubic hair, lack of or diminuitive breast development, and small physical build. In these clips, the females were variously depicted removing their clothing, exposing their genitals to the camera (such that the obvious focus is on the child's genitals), engaging in masturbation, touching the genitals of another child, and engaged in sexual intercourse. The title appears to accurately describe the content relative to minority status of the children.

20.     On the morning of April 20, 2021, Special Agent Ensz informed me that he was unable to power-up the Toshiba hard drive. He contacted Amy Corrigan, an FBI Forensic Examiner at the Heart of America Regional Computer Forensic Laboratory (HARCFL) to see if the HARCFL could provide guidance on how to overcome the issue. Corrigan informed Ensz that the failure to power-up was likely due to the hard drive's age. Corrigan also advised that HARCFL did not have the resources to do a recovery of the data, but that such recovery could possibly be undertaken by a contractor working for the FBI's Headquarters who specializes in data recovery. However, recovery was uncertain and the time taken to recover any data would be extremely lengthy.

21.     After receiving the information from Corrigan, I tasked FBI Staff Operations Specialist (SOS) Anna Barringer to conduct database checks on VIEGRA and his place of residence at 4230 N Eagle Lake Court, Bel Aire, KS 67220.

22.     VIEGRA's latest driver's license was issued on February 24, 2020 with VIEGRA's home address listed as 4230 N Eagle Lake Court, Bel Aire, KS 67220. According to records on Zillow.com and Realtor.com, the RESIDENCE was last sold in July 2012. Therefore, it appears that VIEGRA has resided at and owned the residence at 4230 N Eagle Lake Court, Bel Aire, KS 67220 as early as July 2012.

23.     Searches of publicly available information revealed VIEGRA maintains a Facebook profile. This profile appears to have been operated since November 26, 2016 (as evinced by the first publicly viewable post) and has been used into 2020, indicating VIEGRA has maintained access to computer devices and the internet over a lengthy period of time.

24.     SOS Barringer discovered VIEGRA had a spouse named Suzanne Renee Viegra. A DMV check showed that Suzanne also has the alias Suzanne Renee Sawyer. The DMV check

showed that Suzanne's address did not match VIEGRA's address. Suzanne's listed address on her driver's license, issued on November 11, 2019, is 3110 Malloy Street, Hutchinson, KS 67502. SOS Barringer did not find any record that VIEGRA was divorced.

25.  SOS Barringer also discovered through CLEAR and Facebook checks that VIEGRA has at least one child. VIEGRA's son, Brian David Viegra, lives and works in North Carolina.

26.  DMV checks conducted by SOS Barringer revealed that Viegra has a white Chevrolet Silverado 1500 (KS LIC: CR5) and a Ford Fusion (KS LIC: 314EUY) registered in his name. No other names are on either vehicle registrations.

27.  Physical surveillance of the premises at 4230 N Eagle Lake Court, Bel Aire, KS 67220 revealed a white Chevrolet Silverado 1500 parked in the driveway. I was unable to see the license plate of the vehicle because the rear of the vehicle was facing toward the house. I did not see a Ford Fusion when surveilling VIEGRA's home.

28.  Based on this surveillance as well as the research conducted by SOS Barringer, I believe VIEGRA is the only individual who lives at 4230 N Eagle Lake Court, Bel Aire, KS 67220.

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

29.  From conversation with experienced investigators, including those at the Kansas Internet Crimes Against Children Task Force, I have learned the following regarding child pornography offenders:

a.      The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.   The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children.

c.   The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based mediums used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles. Frequently, multiple mediums will be used.

d.   The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires.

e.   The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.   The majority of individuals who collect child pornography will often attempt to hide their collection and activities from others who do not share their interest. This may involve the use of encryption, mislabeling files, or simply "burying" the child pornography among other files.

30.   In this investigation, VIEGRA presented a laptop computer to Ribbit Computer as his own device. As the owner and apparent operator of the device, it is probable that VIEGRA is familiar with the contents of the device. This is particular likely as he requested Ribbit Computers to recover pictures from the computer.

31.  In this investigation, the laptop's hard drive contained child pornography in a "Shared" folder, located under the "sunshine in the rain" User folder. These files were titled in an extremely graphic fashion, such that any user of the device would recognize them as indicative of child pornography (and, in fact, they were recognized as such by Ribbit Computer personnel). These files included different dates of creation, indicating repeated activity. As VIEGRA is the apparent operator and user of the computer, these facts suggest that he is familiar with the contents and has engaged in repeated downloads (if not also sharing) of child pornography.

32.  Because VIEGRA did not direct Ribbit Computer personnel to a particular folder or discreet collection of picture files, VIEGRA's interest in recovering all pictures from a device aligns with at least two characteristics common to child pornographers - that they frequently retain child pornography for long periods of time, and that they attempt to hide their collections from detection. In this instance, a request for all pictures would likely result in the contraband pictures being hidden or buried among the other innocuous pictures.

33.  Based on the service ticket, with VIEGRA's signature, that the employees of Ribbit Computers provided me, VIEGRA had informed them that he wanted to get pictures recovered from his hard drive and placed onto a thumb drive. VIEGRA's request to transfer the content onto a flash drive, it is reasonable to conclude that VIEGRA has additional computer devices, such as a laptop or desktop computer, that he would use to access the flash drive. Likewise, VIEGRA provided an email address to Ribbit Computer, indicating he maintains access to his web-based Yahoo.com email through another computer device, such as a laptop or smartphone.

34. In light of these observed characteristics of VIEGRA, it is probable that VIEGRA (as owner of the laptop) was aware of the presence of child pornography, and sought to recover those materials for access on a newer device. It is probable that the residence of VIEGRA will contain additional devices as well as evidence relating to child exploitation, child pornography, and contacts with like-minded offenders.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

35. As described above and in Attachment B, this application seeks permission to search for records that might be found in the RESIDENCE and on devices located therein, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e) (2) (B).

36. *Probable cause*. I submit that if a computer or storage media is found on the RESIDENCE, there is probable cause to believe those records will be stored on that computer or storage media, for at least the following reasons:

    a. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto storage media, deleted, or viewed via the Internet.  Electronic files downloaded to storage media can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage media until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage media that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

37.   *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage media in the RESIDENCE because:

a.   Data on the storage media can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage media that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage media that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about when the data files were created and the sequence in which they were created, although this information can later be falsified.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history,

and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that is connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on storage media. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

38. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, who has used it requires considerable time, and taking that much time at the RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic examination of electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present at the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on devices located at the RESIDENCE. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.     Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

39.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the storage media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire storage media, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

40.   As a result of database checks conducted on VIEGRA, the RESIDENCE, and VIEGRA's family, it does not appear that anyone other than VIEGRA lives at the RESIDENCE. However, it is possible that one or more individuals other than VIEGRA currently reside at the RESIDENCE. If so, the RESIDENCE will likely contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

41.   I submit that this affidavit supports probable cause to believe that the RESIDENCE located at 4230 N Eagle Lake Court, Bel Aire, KS 67220 and described in Attachment A does contain evidence of violations of 18 U.S.C. § 2252 and 2252A and therefore respectfully request that this Court issue a search warrant for the search of the premises

and devices located at 4230 N Eagle Lake Court, Bel Aire, KS 67220, being more specifically described in Attachment A which incorporated by reference as if fully set forth herein, authorizing the seizure and search of the items described in Attachment B herein.

Kasev R. Sundar
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 29th day of April, 2021.

THE HONORABLE KENNETH G. GALE
United States Magistrate Judge

## ATTACHMENT A

*Property to be searched*

The property to be searched is 4230 N Eagle Lake Court, Bel Aire, KS 67220, further described as follows:

The residence is near the end of a cul-de-sac and is on the south-side of the cul-de-sac. The residence is a two-story home with a finished basement, 4 bedrooms, 2.5 bathrooms, and is 2126 square feet in area. The exterior of the home is composed of dark grey vinyl, a dark grey roof, various colored bricks, and a white garage door attached to the home with two parking spaces. The home contains a front entryway. The front of the home has a cluster of seven total windows on both the first and second stories. On the back of the home, two back doors lead to a porch attached to the home and in the backyard of the home. There five windows on the back of the home. A wooden fence surrounds the backyard of the home. Photographs of the residence are attached.









Page **19** of **21**

**ATTACHMENT B**

*Property to be seized*

1. Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica, in any format or media, including computer files, prints, negatives, drawings, and paintings.

2. Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software programs, software applications computer related documentation, passwords and data security devices, and storage devices that may be or are used to:

   a. distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

   b. seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

   c. communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

   d. any and all data or information on the device which may relate to subparagraphs 2a, 2b, and 2c, including data or information that may reveal indicia of ownership, access, or use.

3. Any and all notes, documents, records, correspondence, in any format and media (including, but not limited to, envelopes, letters, papers, diaries, manifestos, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

4. Any and all cameras, film, videotapes, or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

5. Any and all documents, records, or correspondence, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

6. Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

7. Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

8. Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

9. Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.